UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HANGXIAO CHE, et al.,

    Plaintiffs,

    v.                        Case No. 3:21-CV-554-CCB-SJF

DAIMLER TRUCKS NORTH AMERICA
LLC, et al.,

    Defendants.

## OPINION AND ORDER

Before the Court is Daimler Trucks North America LLC ("DTNA") and Daimler

Trucks & Buses US Holding, LLC's ("DTB") (collectively, "the Daimler Defendants")

Motion for Summary Judgment. (ECF 188). Plaintiffs Hangxiao Che, et al., oppose this

motion. (ECF 205). The Court grants the Daimler Defendants' motion for the following

reasons.

### I.    RELEVANT BACKGROUND

This is a products liability case that emerged from a tour bus accident. Plaintiffs

assert four counts against all Defendants: (1) strict product liability, (2) negligence, (3)

breach of implied warranty, and (4) wrongful death. (ECF 189-2 ¶¶ 94–126). The core of

Plaintiffs' liability theory is that the Daimler Defendants and other Defendants

introduced a vehicle into the stream of commerce that was defective because DTNA

failed to include an Electronic Stability Control ("ESC") feature on the chassis of the

tour bus that crashed. (ECF 204 ¶ 13). The Court summarizes the undisputed facts below and notes several relevant factual disputes.

On September 20, 2019, a tour bus ("the Bus") crashed in Utah, leading to the alleged injuries of Plaintiffs. (ECF 189-2 ¶¶ 7, 14–33). DTNA sold a truck chassis ("the Subject Chassis") for the Bus to SVO Group, Inc. ("SVO"). (ECF 189-2 ¶ 54). It is the Subject Chassis that is at issue here.

The Subject Chassis was, by itself, an incomplete vehicle. (*Id.* ¶¶ 48–50). It could become part of many different types of final vehicle, including fire trucks, delivery trucks, concrete trucks, box trucks, dump trucks, food or beverage trucks, or moving trucks. (ECF 189-5 ¶ 4). The Subject Chassis was sold to Truck Centers, Inc. ("Truck Centers") for delivery to SVO. (ECF 189-2 ¶¶ 54; ECF 189-6; ECF 189-8). After DTNA sold the Subject Chassis, SVO turned the Subject Chassis into the complete tour bus by customizing and mounting a bus body on the frame rails of the Subject Chassis and then integrating the bus body with the cab section. (ECF 189-2 ¶¶ 48–50; ECF 189-7 at 104:16–19).

After SVO completed the Bus, it sold the Bus to a company called TJ Destination, which then sold the bus to CoachWest Luxury & Professional Motorcars ("CoachWest"). (ECF 189-8; ECF 189-10). A "Dealer/Manufacturer Sales Agreement" was formed between SVO and CoachWest, designating SVO as the "manufacturer" and stipulating that any vehicles to be manufactured outside SVO's "standard specifications" would require approval in writing by SVO. (ECF 189-7 at 108:15–18; ECF 189-11 ¶ 4). In other words, SVO would decide what features were installed on its

vehicles' chassis. (ECF 189-7 at 105:13–106:9, 113:4–17). If CoachWest wanted ESC included on the chassis of a vehicle it purchased, it would need to make that request in writing. (*Id.* at 113:24–114:22, 166:1–24).

The parties contest the degree to which DTNA made dealerships aware of the safety features available on its chassis, but it is undisputed that DTNA provided a brief description of ESC as an option on its ordering platform, and that SVO ordered multiple chassis from DTNA, some with ESC included and some without. (ECF 189-5 ¶¶ 7, 10). That description was included on SpecPro, an electronic version of a data book provided to DTNA's customers. (ECF 208-1 at 30:8–12). The description reads, "Electronic stability combines the rollover prevention of roll stability control with directional stability in order to keep the vehicle traveling on its intended path by providing spin out and drift control." (*Id.* at 101:3–16).

David Klockow, the Sales Executive at Truck Centers, sold the Subject Chassis to SVO. (ECF 189-14 ¶4). Mr. Klockow had a longstanding relationship with the late Alex Foris, the owner of SVO and its predecessor companies. (*Id.* ¶ 5). During that relationship, Mr. Foris's companies, including SVO, purchased hundreds of truck chassis from Truck Centers. (*Id.* ¶ 6). DTNA began offering ESC on the M2 chassis, the same model chassis as the Subject Chassis, prior to the sale of the Subject Chassis. (*Id.* ¶ 9). And Mr. Foris elected to equip three of the M2 chassis he ordered from Truck Centers and DTNA with ESC between 2016 and 2019. (*Id.* ¶ 12). But the parties dispute whether Mr. Klockow specifically offered to include, and Mr. Foris specifically rejected, ESC on the Subject Chassis. Mr. Klockow does, however, recall DTNA providing the

SpecPro description of ESC. (ECF 208-1 at 101:24–25). It is undisputed that SVO did not order ESC, and that the Subject Chassis as built did not include ESC. (ECF 189-2 ¶¶ 53–54).

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). But the Court will not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor will the Court conduct research or develop arguments for the parties. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

To survive summary judgment, the nonmovant "cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial."

*Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III.    ANALYSIS

Plaintiffs allege DTNA failed to include ESC on the Subject Chassis and is therefore liable for damages caused by the lack of ESC.[1] The Daimler Defendants move for summary judgment on the grounds that DTNA owed no duty to Plaintiffs to install the safety feature. In support, they argue that DTNA was only a component manufacturer, and that SVO, the final manufacturer of the Bus, was offered ESC and rejected it.

### a.  Choice of Law

At the pleadings stage of this litigation, the Court addressed the question of which state's law to apply. Plaintiffs, in response to the Daimler Defendants' motion for judgment on the pleadings, urged the Court to apply the law of Oregon, DTNA's corporate home. The Daimler Defendants argued that, as Indiana bore a closer

---

[1] Plaintiffs have previously argued that DTNA's failure to include other safety features beyond ESC gave rise to liability, but at this point in the litigation they only argue liability based on failure to include ESC. (ECF 204 ¶ 13) ("Plaintiffs now only allege that DTNA and other Defendants introduced into the stream of commerce a defective vehicle because it lacked an Electronic Stability Control feature.").

5

relationship to the action, Indiana law should apply. The Court sided with the Daimler Defendants, finding that as all acts related to the sale of the Subject Chassis took place in Indiana, Indiana law should apply. (ECF 154 at 5–7).

Now Plaintiffs ask the Court to reverse that determination, cross-referencing their opposition to CoachWest's motion for summary judgment. In that brief, Plaintiffs argue that California law should apply to the related case of *Yao, et al. v. Daimler Trucks North America, LLC. See* Plaintiffs' Response in Opposition to Defendant DTNA's Motion for Summary Judgment at 9–10, No. 21 C 784 (N.D. Ind. Sep. 19, 2025), ECF 205. Here, they argue that there is "no sound reason to apply one law to one set of Plaintiffs and another law to the other." (ECF 196 at 12). In the *Yao* case, this Court found that Indiana law applies. No. 21 C 784 (N.D. Ind. March 11, 2026), ECF 220. Plaintiffs offer no reason to apply California law here besides consistency between the related cases. Accordingly, Indiana law remains the governing law of this case.

### b. Indiana Product Liability Act Claim

The Indiana Product Liability Act ("IPLA") "governs all actions that are (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." *Atkinson v. P&G-Clairol, Inc.*, 813 F. Supp. 2d, 1021, 1023–24 (N.D. Ind. 2011) (quotations omitted). In design defect cases such as this, a negligence standard applies. *See Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019). To prevail on a claim under the IPLA, Plaintiffs must show that (1) DTNA owed a duty

to Plaintiffs, (2) DTNA breached that duty, and (3) DTNA's breach proximately caused injury to Plaintiffs. *Id.*

There is one exception to the IPLA that is relevant here: the component-part manufacturer defense. In *Brewer v. PACCAR, Inc.*, the Indiana Supreme Court made clear that a component-part manufacturer "has no duty to include optional safety features that were offered to, and rejected by, the final manufacturer." *Id.* at 625. This is because it is the final manufacturer who "is in the best position to decide which features are necessary—and which are not—for the environment in which the integrated product will be used." *Id.* To successfully assert the component-part manufacturer defense at summary judgment, a defendant must show there is no dispute of material fact (1) that it is in fact a component-part manufacturer, (2) that the optional safety feature in question was offered to the final manufacturer, and (3) that the final manufacturer rejected the feature. *Id.* If the final manufacturer denies that it was offered a safety feature, it falls to the component-part manufacturer to produce evidence indicating the offer and rejection of the safety feature. *See id.* One example of such evidence is a "purchase order or invoice identifying specific safety features that were offered and rejected." *Id.*

Here, Plaintiffs allege that DTNA is liable because it failed to include the optional safety feature ESC. The Daimler Defendants assert the component-part manufacturer defense, arguing that DTNA is a component-part manufacturer, that ESC was offered on the Subject Chassis to the final manufacturer, and the final manufacturer of the Bus rejected it.

7

### i. *Component-Part Manufacturer*

In their motion for summary judgment, the Daimler Defendants assert that DTNA is a component-part manufacturer. In support, they draw an analogy to *Brewer.* In *Brewer*, the Indiana Supreme Court found that a glider kit that could be combined with an engine, transmission, and exhaust system to create a complete semi-truck was a component part, and thus the company that built it was a component-part manufacturer. *Id.* at 619. Here, the Subject Chassis built by DTNA was an incomplete vehicle capable of combination with other parts to create a variety of vehicles. Thus, the Daimler Defendants argue, DTNA is a component-part manufacturer within the meaning of *Brewer.* Plaintiffs have offered no contradicting argument. The Court agrees with the Daimler Defendants. The Daimler Defendants have satisfied this first element of the component-part manufacturer defense as a matter of law.

### ii. *Offer of ESC*

Next, the Daimler Defendants assert that ESC was offered to the final manufacturer. In support, they argue that the undisputed facts show SVO was the final manufacturer of the Bus and that Truck Centers, the seller of the Subject Chassis, offered ESC to SVO when SVO ordered the Subject Chassis from DTNA through Truck Centers. Plaintiffs accept that SVO was the final manufacturer but dispute that SVO was offered ESC when it ordered the Subject Chassis. They argue that the Daimler Defendants are stacking inferences to reach the conclusion that SVO must have been aware that ESC was available as an option.

The Daimler Defendants first point the Court to the testimony of Mr. Klockow, the Sales Executive for Truck Centers. In response to Plaintiffs' argument that Mr. Klockow only testifies about general practice, the Daimler Defendants emphasize several relevant parts of his testimony. First, Mr. Klockow testified that he discussed the availability of ESC with Mr. Foris, SVO's owner, when ESC became available in 2010. (ECF 208-1 at 110:7–17; 112:5–9). Second, Mr. Klockow testified that Mr. Foris explicitly rejected ESC on medium-duty chassis like the Subject Chassis. (*Id.* at 132:19–133:24). Third, Mr. Klockow testified that he sold hundreds of vehicles to Mr. Foris, who repeatedly ordered the same types of vehicles. (*Id.* at 53:10–55:25). The Daimler Defendants argue that this conclusively establishes that SVO, through Mr. Foris, was aware of ESC as an option on the Subject Chassis.

The Daimler Defendants then highlight the Dealer Handshake document created by Mr. Klockow. Mr. Klockow testified that he created the document after discussing the Subject Chassis with Mr. Foris. (*Id.* at 123:13–23, 127:5–10). And in his declaration, Mr. Klockow stated that he used the Dealer Handshake to confirm that the chassis ordered conformed to the specifications the customer requested. (ECF 189–14 ¶ 15). The Dealer Handshake contains a tick mark next to the phrase, "NO VEHICLE STABILITY ADVISOR OR CONTROL." (ECF 189-17 at 13). Mr. Klockow testified and stated in his declaration that he created the tick mark to indicate that Mr. Foris declined ESC for the Subject Chassis. (ECF 189-14 ¶ 15; ECF 208-1 at 127:5–10). The Daimler Defendants argue that because Mr. Foris was aware of the ESC option, Mr. Klockow testified that Mr. Foris declined ESC on the Subject Chassis, and the Dealer Handshake created by

Mr. Klockow after discussion with Mr. Foris showed that ESC was not included on the Subject Chassis, it has been established that ESC was offered to Mr. Foris.

Plaintiffs do not offer any evidence to contradict this. Instead, they contend that the Daimler Defendants' evidence is insufficient to show that ESC was offered. In support, they argue that the Daimler Defendants do not offer any purchase order or invoice showing ESC was offered, instead providing only testimony about general industry practice and testimony about what Mr. Foris "would have known." (ECF 203 at 10). Citing *Jarrell v. Monsanto* for the proposition that the general availability of a feature does not constitute an offer of that feature to a specific customer, they argue that the Daimler Defendants have failed to produce evidence sufficient to show there is no material dispute of fact over whether DTNA offered ESC on the Subject Chassis to SVO. 528 N.E.2d 1158 (Ind. Ct. App. 1988).

To begin, it is important to note the factual distinctions between this case and *Brewer*. In *Brewer*, as here, the defendant component-part manufacturer alleged that the final manufacturer was offered an optional safety feature, and the final manufacturer rejected that feature. *See* 124 N.E.3d at 625. But the final manufacturer in *Brewer* provided a discovery response in which it denied that it was ever offered the feature. *Id.* When the component-part manufacturer provided no contradicting evidence, "such as a purchase order or invoice identifying specific safety features that were offered and rejected," the *Brewer* Court held that the component-part manufacturer failed to show entitlement to summary judgment. *Id.*

Here, there are two critical differences. First, Plaintiffs do not argue that SVO denies it was offered the option of ESC. In fact, Plaintiffs agree that SVO ordered chassis with and without ESC. And second, the Daimler Defendants have provided positive evidence, including Mr. Klockow's deposition testimony and the Dealer Handshake document, that SVO was in fact offered the ESC option. The position of the parties in *Brewer* is reversed here: it is the defendant who has provided evidence supporting the existence of an offer, and the plaintiff who has failed to provide contradicting evidence. The fact that the Daimler Defendants' evidence does not fit precisely within the example of "a purchase order or invoice" is immaterial; the *Brewer* Court was emphasizing the importance of evidence with that example, and the Daimler Defendants have provided evidence. *See id.* ("[Defendant] *did not provide anything* to refute [the contradicting discovery response], such as a purchase order or invoice . . . ." (emphasis added)). The Daimler Defendants' evidence is all the more compelling in the context of a high-volume sales relationship like that between DTNA and SVO, where the granularities of each individual chassis negotiation and purchase are less likely to have been recorded. In the absence of any contradicting evidence, the Court finds that the Daimler Defendants have established as a matter of law that ESC was offered to the final manufacturer.

### iii. Rejection of ESC

Finally, the Daimler Defendants assert that SVO rejected the offer of ESC. In support, they argue that Mr. Klockow's uncontroverted testimony and affidavit show that Mr. Klockow and Mr. Foris discussed the availability of ESC, and while SVO did

order some chassis that included ESC, SVO did not order the Subject Chassis with ESC included. Plaintiffs respond that the Daimler Defendants ask the Court to accept that "because SVO had been purchasing truck chassis from DTNA (even if indirectly) for decades, it surely knew of the availability of features like ESC and could include them if desired." (ECF 205 at 17). This, Plaintiffs contend, is insufficient to constitute rejection within the meaning of *Brewer.*

Both parties agree that SVO ordered chassis with and without ESC between 2016 and 2019. And both parties agree that SVO did not order ESC on the Subject Chassis. The Daimler Defendants argue that SVO's rejection of ESC on the Subject Chassis was knowing, while Plaintiffs contend that the evidence does not show SVO made a conscious decision to reject ESC. To support knowing rejection, the Daimler Defendants point to the testimony of Mr. Klockow and the declaration of Christopher M. Rieflin, DTNA's executive engineer. Mr. Klockow testified in his deposition that Mr. Foris told him ESC was unnecessary for medium-duty chassis like the Subject Chassis. (ECF 208-1 at 132:11–133:19). And Mr. Rieflin asserted that based on his review of SVO's purchase history, between 2016 and 2019, SVO ordered 48 truck chassis from DTNA, and only ordered three of those chassis with ESC. (ECF 189-5 ¶ 10). The Daimler Defendants argue that this, combined with the undisputed fact that SVO ultimately decided what features would be included on the chassis it ordered, shows rejection.

The Daimler Defendants have shown that SVO, the final manufacturer, knew that ESC was available. They have shown that SVO occasionally ordered chassis with ESC but usually declined ESC during the period in which the Subject Chassis was

ordered. And they have shown that SVO ultimately decided what features would be included on its chassis, and that the Subject Chassis was not ordered with ESC. Plaintiffs themselves included with their complaint an invoice to SVO that stated the Subject Chassis was purchased with "NO VEHICLE STABILITY ADVISOR OR CONTROL." (ECF 189-2 ¶ 53). Nothing more is needed to show rejection. The Court finds that the Daimler Defendants have established as a matter of law that SVO, the final manufacturer, rejected the inclusion of ESC on the Subject Chassis.

At the pleadings stage, the Court found the Daimler Defendants' assertion of the component-part manufacturer defense to be "an extremely close call." (ECF 154 at 9). It is no longer. Based on undisputed facts and uncontroverted evidence, the Daimler Defendants have shown that DTNA was a component-part manufacturer, that it offered ESC to SVO, and that SVO rejected that offer. Thus, DTNA had no duty to include ESC and the Daimler Defendants are entitled to judgment as a matter of law.

### iv.  Plaintiffs' Additional Arguments

Plaintiffs make two more arguments that bear mentioning. First, they argue with minimal development that DTNA breached its duty to warn downstream consumers of the risks of buying a chassis without ESC. This argument fails. *Brewer* is clear: where a component-part manufacturer shows that a safety feature was offered to the final manufacturer, and the final manufacturer rejected that offer, the component-part manufacturer has no duty to include the safety feature. *See* 124 N.E.3d at 625. It is the final manufacturer who "is in the best position to decide which features are necessary—and which are not—for the environment in which the integrated product will be used."

*Id.* Plaintiffs' perfunctory allegation that DTNA breached its duty to warn cannot overcome this.

Second, Plaintiffs seem to argue that because DTNA had no contact with downstream purchasers beyond Truck Centers, DTNA is not shielded by Truck Centers' offer and SVO's rejection of ESC. But again, *Brewer* is clear: if the optional safety feature is offered to the final manufacturer, and the final manufacturer declines, the component-part manufacturer has no duty to include the safety feature. *Id.* It does not matter that it was not DTNA that offered the feature to SVO; it only matters that the feature was offered and rejected. This argument also fails.

> ### v. *DTB's Liability*

The Daimler Defendants argue that DTB is entitled to summary judgment on independent grounds. In support, they state that the operative complaint attributes no specific conduct to DTB, instead seeming to impute DTNA's conduct to DTB on the basis that DTB is the sole member of DTNA. They cite *O'Brien v. Watco Contract Switching, Inc.* for the proposition that corporate ownership of a subsidiary does not, on its own, impose liability on the parent entity. *See* 802 N.E.2d 999, 1007–08 (Ind. Ct. App. 2004). As Plaintiffs have made no showing that DTB was involved in any aspect of the production and sale of the Subject Chassis, the Daimler Defendants argue that summary judgment should be granted for DTB.

Plaintiffs do not respond to this argument in their response to the Daimler Defendants' motion for summary judgment, and the Court sees no evidence in the record to contradict the Daimler Defendants' argument. In any event, even if DTNA's

14

conduct could be imputed to DTB, the Court has determined above that DTNA had no duty to include ESC on the Subject Chassis and is thus entitled to summary judgment. For this reason and because Plaintiffs have put forward no evidence to show a genuine dispute of reasonable fact over DTB's involvement in this case, DTB is entitled to summary judgment.

## IV.    CONCLUSION

For these reasons, the Daimler Defendants' Motion for Summary Judgment, (ECF 188), is **GRANTED.**

SO ORDERED on March 11, 2026.

_/s/ Cristal C. Brisco_
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT