UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HANGXIAO CHE, et al.,

    Plaintiffs,

    v.                                                      Case No. 3:21-CV-554-CCB-SJF

MOR RYDE INTERNATIONAL, INC.,
et al.,

    Defendants.

**OPINION AND ORDER**

Before the Court is CoachWest Luxury & Professional Motorcars, Inc.'s

("CoachWest") Motion for Summary Judgment. (ECF 192). Plaintiffs Hangxiao Che, et

al., oppose this motion. (ECF 201). CoachWest has also moved for a determination of

governing law. (ECF 212). The Court grants CoachWest's motion for summary

judgment and denies its motion for a determination of governing law as moot for the

reasons below.

I.    **RELEVANT BACKGROUND**

This is a products liability case that emerged from a tour bus accident. Plaintiffs

assert four claims against all Defendants: (1) strict product liability, (2) negligence, (3)

breach of implied warranty, and (4) wrongful death. As this is a complex case with

many elements, the Court repeats background information based on the record that it

included in its prior order on Daimler Trucks North America LLC's ("DTNA") motion

to dismiss, (ECF 218), before recounting the undisputed facts material to the decision of this motion.

### a. Background Information

On September 20, 2019, a tour bus crashed in Utah, leading to the alleged injuries of Plaintiffs. (ECF 189-2 ¶¶ 18, 21–22). The tour bus was manufactured by three companies in three different stages: (1) DTNA built a truck chassis for the tour bus in December 2016, (2) MOR/Ryde International configured the Subject Chassis for use as a tour bus in February 2017, and (3) SVO Group, Inc. ("SVO") finished the tour bus by configuring it with an Embassy bus body in February 2017. (*Id.* ¶¶ 36–39).

After SVO completed the tour bus, it sold the tour bus to CoachWest. (ECF 189-8; ECF 189-10). A "Dealer/Manufacturer Sales Agreement" was formed between SVO and CoachWest, designating SVO as the "manufacturer" and stipulating that any vehicles to be manufactured outside SVO's "standard specifications" would require approval in writing by SVO. (ECF 189-7 at 108:15–18; ECF 189-11 ¶ 4).

### b. Undisputed Material Facts

CoachWest is a California company that sells limousines, funeral vehicles, buses, and sprinters. (ECF 191-8 at 20:22–21:3). Joanna Young, the president of America Shengjia, sought out an SVO tour bus sold by CoachWest for purchase. (ECF 191-10 at 58:16–59:14). She knew that CoachWest did not manufacture the bus. (*Id.* at 221:12–23). CoachWest's role in the transaction was that of a retail seller, purchasing the tour bus from SVO and selling it to end consumers. (ECF 191-8 at 23:24–24:5; 38:16–25; 59:7–25; 87:9–13; 159:4–10). Decisions about what features to include on the chassis, including

2

electronic stability control ("ESC"), were made by SVO. (*Id.* at 38:16–41:2, 105:22–106:9, 113:4–7, 114:20–22, 115:16–19, 130:8–135:2,; 169:5–12). SVO also dictated the prices at which CoachWest would sell SVO buses. (*Id.* at 11:3–112:3). And SVO provided the documents, brochures, and information regarding specification of the tour bus that were posted on CoachWest's website. (*Id.* at 130:1–132:9). CoachWest then provided information SVO gave it to customers. (*Id.* at 39:1–5). SVO did not provide CoachWest with information about ESC beyond what was in the Owner's Manual that SVO included with the tour bus. (*Id.* at 43:22–44:8, 89:9–90:19).

Ms. Young placed her order for the tour bus in 2016 and received it in 2017. (ECF 191-10 at 84:17–85:1, 201:5–202:12). At the time she purchased it, she was unaware that ESC was an option on the model of chassis that her bus used, or that ESC even existed. (ECF 202-4 at 193:21–194:4). If she had been aware of ESC as an option, she would have wanted it. (*Id.* at 194:21–195:6). The completed tour bus was delivered to CoachWest and then transferred to Ms. Young. (ECF 191–8 at 59:7–25). When the tour bus was transferred to Ms. Young, she was also given a copy of the tour bus's Owner's Manual. (*Id.* at 87:3–8, 162:18–23; ECF 204-4 at 195:8–13).

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). But the Court will not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor will the Court conduct research or develop arguments for the parties. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

To survive summary judgment, the nonmovant "cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III.    ANALYSIS

CoachWest moves for summary judgment on the basis that Plaintiffs have not established any genuine issues of fact material to their claim under the Indiana Product Liability Act ("IPLA") and because Plaintiffs' claims are time-barred under the IPLA's statute of limitations. Plaintiffs respond by arguing (1) that this Court should apply the law of California instead of Indiana, and (2) that even if this Court applies Indiana law, they have put forward sufficient evidence for this case to proceed to trial. The Court has previously determined that Indiana law applies, but that determination did not address this specific defendant. Thus, the Court begins by addressing choice-of-law and then proceeds to the merits of CoachWest's motion.

### a.  Choice of Law

At the pleadings stage of this litigation, the Court addressed which state's substantive law applies. Plaintiffs, in response to Defendant Daimler Trucks North America LLC's ("DTNA") motion for judgment on the pleadings, urged the Court to apply the law of Oregon, DTNA's corporate home. DTNA argued that, as Indiana bore a closer relationship to the action, Indiana law should apply. The Court sided with DTNA, finding that as the events fundamental to the alleged product defects took place in Indiana, Indiana law applies. (ECF 154 at 5–7). CoachWest references this decision in their motion for summary judgment, noting that the Court previously decided that Indiana substantive law governs this case. Plaintiffs now ask the Court to apply California law to CoachWest. As Indiana still has a closer relationship to this action, the Court declines to do so.

5

In their response to CoachWest's motion, Plaintiffs argue that California law should apply to the claims against CoachWest. In support, they cite *Van Dusen v. Barrack* for the proposition that transfer under 28 U.S.C. § 1404(a) does not affect choice of law analysis unless the transferring court could not properly exercise jurisdiction over the defendant. 376 U.S. 612, 616 (1964). But § 1404(a) permits transfer based on the convenience of parties and witnesses. 28 U.S.C. § 1404(a). Here, Plaintiffs stipulated to transfer because California could not exercise personal jurisdiction over DTNA. (ECF 15). Thus, *Van Dusen* does not apply. *See Gonzalez v. Volvo of Am. Corp.*, 734 F.2d 1221, 1224 (7th Cir. 1984), *superseded on other grounds*, 752 F.2d. 295 (7th Cir. 1985) ("[P]laintiffs are not permitted to capture favorable law of forums which lack personal jurisdiction over the defendant by filing suit there and then transferring the action to a state that is able to exercise personal jurisdiction.").

Though much of the reasoning behind the Court's prior finding that Indiana law governs applies to CoachWest, the opinion did not specifically address CoachWest. (ECF 154 at 7). When the Court made that finding, there was "no argument [before the Court] from Plaintiffs that any law other than Indiana law would apply to any defendant other than the Daimler Defendants." (*Id.*) Now there is. Accordingly, the Court will address Plaintiffs' argument that California law should apply to CoachWest here.

Because this Court is sitting in diversity, it must "apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2005). Indiana

choice of law requires this Court to begin by determining whether the differences between the laws of the states are "important enough to affect the outcome of the litigation." *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987). Here, both parties agree that is the case. Indiana law does not assign strict product liability to sellers unless they are also the manufacturers of the product, while California law holds sellers strictly liable for injuries caused by defective products. And Indiana applies the unreasonably-dangerous products liability test, *see TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 209 (Ind. 2010), while California applies either the risk-benefit or consumer-expectation test in products liability cases, *see Barker v. Lull Eng'g Co.*, 573 P.2d 443, 446 (Cal. 1978).

The Court has previously determined that Utah, the state where the accident occurred, bears little connection to the action. (ECF 173 at 6). Thus, it must proceed to other factors. The Indiana Supreme Court has emphasized that "[c]hoice-of-law rules are fundamentally judge-made and designed to ensure the appropriate substantive law applies." *Hubbard*, 515 N.E.2d at 1073. While the traditional rule in Indiana has been to apply the substantive law of the place where the tort occurred, when that location is insignificant to the action, Indiana courts will consider other aspects of the case. The Indiana Supreme Court has highlighted three useful factors to consider: "1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered." *Id.* It has stressed, though, that these factors are "mere examples," and the list is not "exclusive." *Simon v. United States*, 805 N.E.2d 798, 802 (Ind. 2004).

The Indiana Supreme Court has also warned against taking this liberalization of its choice-of-law rules as permission to make "separate determinations [of substantive law] for individual issues within the action." *Id.* Indiana courts will consider different claims under different substantive law where appropriate, but this "does not amount to an adoption of dépeçage," the practice of "analyzing different issues within the same case separately under the laws of different states." *Simon*, 805 N.E.2d at 801–802. Courts must consider the "cause of action as a whole," not individual theories of liability, to determine which law is appropriate. *Id.* at 805.

This is a case about a tour bus that Plaintiffs allege was defectively designed and manufactured. These issues of defective design and manufacture are critical to each of Plaintiffs' four claims against all Defendants, because Plaintiff cannot prevail on any claim without establishing defect. (*See, e.g.*, ECF 135 ¶ 95 ("Count I . . . Defendants . . . designed, manufactured, distributed, and/or sold the subject Embassy Vehicle with design, manufacturing, and warning defects."); *Id.* ¶ 110 ("Count II . . . Defendants[] fail[ed] to properly guard and protect the Embassy Bus's users, and others, from the defective design of said product . . . ."); *Id.* ¶ 117 ("Count III . . . The subject vehicle was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and unfit for the ordinary purpose for which it was used in that it caused injury to Plaintiffs."); *Id.* ¶ 125 ("Count IV . . . As a legal and proximate result of the aforementioned defects and Defendants' acts and/or omissions, Plaintiffs Chenduo Qi and Wenhao Qi suffered injuries . . . .")). Each count is leveled against all Defendants.

The Court proceeds to the *Hubbard* factors, bearing in mind that each "should be evaluated according to [its] relative importance" to the case. *Hubbard*, 515 N.E.2d at 1073. First, the Court will consider where the conduct causing the injury occurred. Plaintiffs argue that this factor supports California law because the tour bus was sold in California. But this oversimplifies the inquiry, focusing narrowly on one element of one theory of liability instead of "the cause of action as a whole." *Simon*, 805 N.E.2d at 805. Plaintiffs repeatedly allege throughout their complaint that their injuries were caused by the defective design and manufacture of the tour bus. The complete tour bus was designed and assembled in Indiana by Indiana companies, so any defects originated in Indiana. Furthermore, both parties agree that SVO, the Indiana-based final manufacturer of the tour bus, dictated to CoachWest what price to set on SVO vehicles sold by CoachWest. (ECF 200 ¶ 13). Similarly, both parties agree that SVO determined what SVO vehicles CoachWest would be allowed to distribute. (*Id.* ¶ 15). And both parties agree that SVO provided the Owner's Manual of the tour bus, as well as the documents, brochures, and information regarding specifications of SVO buses that CoachWest posted on their website. (*Id.* ¶¶ 10, 25).

Though the tour bus was sold in California, the nature of Plaintiffs' claims and the undisputed facts show that the conduct that allegedly caused Plaintiffs' injury occurred principally in Indiana. Allegations of design and manufacturing defects form the backbone of Plaintiffs' case because they are essential elements of all four of Plaintiffs' claims. The allegedly defective tour bus was designed in Indiana and assembled in Indiana. The Owner's Manual given to the purchaser was provided by an

Indiana company. And while the tour bus was sold in California, an Indiana company determined whether it could be sold, at what price it could be sold, and what advertising material and specification documents would be posted on the seller's website. Because Indiana is the gravitational center of this case, this factor cuts in favor of applying Indiana law.

The second *Hubbard* factor, the residence or place of business of the parties, is relatively straightforward, if not core to the issues being litigated. Plaintiffs are all residents of the People's Republic of China, and CoachWest is a California company. Plaintiffs themselves are residents of a foreign country, and their injuries occurred in Utah, a state whose substantive law neither party argues should be applied. But CoachWest, a California company, sold the tour bus in California, so this factor offers some support in favor of applying California law.

The third *Hubbard* factor is indeterminate. While the tour bus was designed and assembled in Indiana and sold by CoachWest in California, Plaintiffs themselves have no real relationship to either the Indiana manufacturers or CoachWest. Their sole point of contact with CoachWest was the tour bus provided by the tour company. Because "there is no real relationship" between the parties, there is "no place where that relationship could be centered." *Simon*, 805 N.E.2d at 807.

The *Hubbard* factors are not to "be applied mechanically; 'rather they are to be evaluated according to their relative importance to the particular issues before the Court.'" *Jean v. Dugan*, 20 F.3d 255, 261 (7th Cir. 1994) (quoting *Hubbard*, 515 N.E.2d at 1074). In situations where the *Hubbard* factors do not yield a clear answer, the Indiana

Supreme Court encourages courts to look to the "gravamen of th[e] case" to determine the most important relevant factor. *Simon*, 805 N.E.2d at 806. This is a products liability case, and product defects are essential to all of Plaintiffs' claims. Thus, the gravamen of this case is alleged defective design and manufacturing. *See id.* at 805 (declining to apply dépeçage and considering a wrongful death cause of action "as a whole" to determine it was fundamentally about damages); (*see also* ECF 154 at 6 (looking to the whole cause of action to determine that Indiana substantive law applies to this case)). Consequently, the most important relevant factor is where that defective design and manufacturing occurred. That place is Indiana. Thus, Indiana "has a more significant relationship with the case, and, therefore, under Indiana choice-of-law rules," Indiana law continues to apply. *Id.* at 806.

### b. Statute of Limitations

CoachWest first briefly argues that it is entitled to summary judgment because Plaintiffs' claims are time-barred under the IPLA. In response, Plaintiffs argue that their claims are timely under Federal Rule of Civil Procedure 15(c) because their claims relate back to the date of their original pleading.

The IPLA provides in relevant part that "a product liability action must be commenced: (1) within two (2) years after the cause of action accrues." Ind. Code § 34-20-3-1. But Rule 15(c) provides that an amendment of a pleading relates back to the date of the original pleading when

> [(c)(1)](B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed R. Civ. P. 15(c). Here, CoachWest asserts, and Plaintiffs do not dispute, that Plaintiffs' claim accrued on September 19, 2019, the date of the accident. Plaintiffs' addition of CoachWest to their complaint did not occur until they filed their second amended complaint on May 30, 2023, more than two years after claim accrual. But their addition does relate to "the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." *Id.* So the question for the Court is whether CoachWest "received such notice of the action that it will not be prejudiced in defending on the merits" and whether CoachWest "knew or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity." *Id.*

Plaintiffs argue that CoachWest was on notice of the action because "several injured Plaintiffs expressly named CoachWest in their previous complaint, which was served upon CoachWest on September 17, 2021." (ECF 201 at 16 (referring to the Superior Court of California case filed by the *Yao* Plaintiffs in what has become *Yao v. Daimler Trucks North America LLC*, 3:21 C 784 (N.D. Ind. Sep. 20, 2021))). They also

12

contend that CoachWest was on notice because the "*Yao* Plaintiffs' case was transferred to this court shortly thereafter on October 14, 2021." (ECF 202 at 16). Given the fact that CoachWest was sued by the *Yao* Plaintiffs within two years of claim accrual, it seems likely that CoachWest was on notice of this action before the expiration of the statute of limitations. Though CoachWest was not added to the complaint in this case until 2023, this case and the *Yao* case have proceeded on parallel tracks, with near-identical claims and defenses raised. CoachWest was added to the *Yao* case in 2021. In that case, it was defending against the same claims as in this case, raised by similarly situated plaintiffs. Accordingly, it is unlikely that CoachWest was prejudiced in its merits defense here by its delayed addition to the case.

Similarly, as this case and the *Yao* case are based on the same occurrence and separated only by the identity of the individual plaintiffs, it seems likely that, "absent some mistake," these Plaintiffs would also have named CoachWest as a defendant for its role in the distribution of the tour bus. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010). Parties that "legitimately believe[]" that the statute of limitations on an action has lapsed without any attempt to sue them have "a strong interest in repose." *Id.* at 550. But "repose would be a windfall" for CoachWest, since CoachWest "understood, or . . . should have understood" based on the *Yao* case filed against it, that it "escaped suit during the limitations period only because the plaintiff[s] misunderstood a crucial fact about [its] identity." *Id.* Accordingly, the Court finds that Plaintiffs' claim against CoachWest relates back to the filing of their initial complaint under Federal Rule of

Civil Procedure 15(c), and thus their IPLA claim against CoachWest is not barred by the statute of limitations. That IPLA claim, though, fails for the reasons below.

**Indiana Product Liability Act Claim**

The IPLA "governs all actions that are (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." *Atkinson v. P&G-Clairol, Inc.*, 813 F. Supp. 2d, 1021, 1023–24 (N.D. Ind. 2011) (quotations omitted). In design defect cases such as this, a negligence standard applies. *See Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019). To prevail on a claim under the IPLA, Plaintiffs must show that (1) CoachWest owed a duty to Plaintiffs, (2) CoachWest breached that duty, and (3) CoachWest's breach proximately caused injury to Plaintiffs. *Id.*

> i. *Strict Liability and Breach of Implied Warranty*

In Count 1 of their complaint, Plaintiffs raise a strict liability claim. They allege that CoachWest is strictly liable for Plaintiffs' injuries because the bus was allegedly sold with design, manufacturing, and warning defects. (ECF 135 ¶ 94–107). CoachWest argues that summary judgment should be granted on this claim because it is not available under Indiana law. In support, they cite the Indiana code for the proposition that

> [a] product liability action based on the doctrine of strict liability in tort may not be commenced or maintained against a seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer *unless the seller is a manufacturer* of the product or of the

14

part of the product alleged to be defective.

Ind. Code § 34-20-2-3 (emphasis added). CoachWest does not respond to this argument.

It is undisputed that CoachWest did not manufacture the tour bus. (ECF 200 ¶¶ 2, 7). Thus, as a matter of law, Plaintiffs' strict liability claim against CoachWest fails. CoachWest is entitled to summary judgment on this claim.

In Count 3 of their complaint, Plaintiffs raise a breach-of-implied-warranty claim. (ECF 135 ¶¶ 115–119). They allege that Defendants breached their implied warranty that the tour bus was safe because the tour bus was unduly dangerous. (*Id*. ¶ 117). CoachWest argues that summary judgment should be granted on this claim because it, too, is not available under Indiana law. Plaintiffs do not address this argument, confining their response to the viability of this claim under California law.[1]

The IPLA "governs all actions brought by a user or consumer against a manufacturer for physical harm caused by a product, regardless of the legal theory upon which the action is brought." *Timm v. Goodyear Dunlop Tires N. Am. Ltd.*, 309 F. Supp. 3d 595, 599 (N.D. Ind. 2018). Under the IPLA, standalone breach-of-implied-warranty claims are unavailable. *Henderson v. Freightliner, LLC*, No. 1:02 C 1301, 2005 WL 775929, at *3 (S.D. Ind. March 24, 2005) ("The IPLA effectively supplants . . . breach of implied warranty claims."). Thus, as a matter of law, Plaintiffs' breach-of-implied-

---

[1] Plaintiffs make alternative arguments based on Indiana and California law throughout their response to CoachWest's motion. (ECF 202). Because the Court has determined that Indiana law continues to apply in this case, the Court disregards Plaintiffs' California law arguments and considers only their Indiana law arguments.

warranty claim fails as a matter of law. CoachWest is entitled to summary judgment on this claim.

### ii. Negligence

In Count 2 of their complaint, Plaintiffs raise a negligence claim. They allege that CoachWest is liable because CoachWest sold the tour bus with design, manufacturing, and warning defects. (ECF 150 ¶¶ 108–114). CoachWest argues that summary judgment should be granted on the design negligence aspect of this claim because as CoachWest did not design the tour bus, CoachWest had no duty to Plaintiffs. It further argues that summary judgment should be granted on the failure-to-warn aspect of this claim because it had no duty to provide warnings regarding the risk of rollover if the operator lost control of the tour bus, it had no duty to provide warnings beyond those provided by the manufacturer, and the operator of the bus did not read the manufacturer's warnings. Plaintiffs respond that Indiana law recognizes liability for the failure of a seller to exercise reasonable care when warning a purchaser of dangers in a product, and there is a genuine issue of material fact as to whether CoachWest breached that duty.

Under Indiana law, a seller may be liable for selling a product "in a defective condition unreasonably dangerous" if (1) the user is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, (2) the seller is engaged in the business of selling the product, and (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person who is allegedly

liable. Ind. Code § 34-20-2-1. If, however, the action is based on an alleged design defect or failure to warn, Indiana law applies a negligence standard, providing that

> the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions.

Ind. Code § 34-20-2-2.

For Plaintiffs to prevail under this standard, they must make three showings. First, they must show that the tour bus was "in a defective condition unreasonably dangerous." *Id.* Second, they must show (a) Plaintiffs were in the class of persons that CoachWest should have reasonably foreseen as being subject to the harm caused by the defective condition of the tour bus, (b) CoachWest was engaged in the business of selling the tour bus, and (c) the tour bus was expected to and did reach the user without substantial alteration in its condition from when CoachWest sold it. *Id.* Third, they must establish that CoachWest failed to exercise reasonable care by showing that (a) CoachWest had a duty to Plaintiffs, (b) CoachWest breached that duty, and (c) the breach proximately caused injury to Plaintiffs. *See Brewer*, 124 N.E.3d at 621. If Plaintiffs cannot show each of these elements, they cannot prevail.

It is undisputed that CoachWest did not manufacture the tour bus, so the Court will confine its analysis to Plaintiffs' allegations that (1) CoachWest failed to exercise reasonable care in designing the tour bus and (2) CoachWest failed to exercise reasonable care in providing the warnings or instructions. CoachWest primarily argues that it had no duty in both cases, so the Court focuses on the duty element of the negligence standard.

### 1. Design Negligence

First, CoachWest seeks summary judgment regarding the design negligence aspect of Plaintiffs' claim. In support, it argues that it had no duty to Plaintiffs regarding the design of the bus because it did not play any role in designing the tour bus. Plaintiffs' argument focuses on the fact that electronic stability control ("ESC") was not included on the tour bus chassis even though CoachWest allegedly knew ESC was generally available as an option. But CoachWest has put forward uncontroverted evidence that the decision to include or not include ESC on the chassis of the tour bus was made by SVO Group ("SVO"), the party that assembled the tour bus. CoachWest's corporate representative, Jay Real, testified that SVO ordered the chassis for the tour bus and decided how it would be equipped. (ECF 191-8 at 40:18–21; 105:22–25). Mr. Real also testified that he viewed SVO as the "expert in terms of what equipment needs to be on the chassis" for the chassis to function as part of a cutaway tour bus. (*Id.* at 106:7–9) When CoachWest bought a vehicle from SVO, it was SVO that ultimately made the decision on how to equip the chassis. (*Id.* at 114:20–22). In addition to Mr. Real's testimony, CoachWest points the Court to its interrogatory response that it did not design, assemble, or build the tour bus. (ECF 191-15 at 1–2). Based on this, CoachWest argues that the evidence shows it did not design the tour bus, and thus it cannot be held liable for failing to exercise reasonable care in its design.

Plaintiffs put forward no argument or evidence to contradict this. Indeed, Plaintiffs do not seem to contest this argument at all, instead focusing on their argument that they have demonstrated sufficient evidence exists to hold CoachWest liable for

failure to warn. Accordingly, the Court finds that no genuine issue of material fact exists as to whether CoachWest designed the tour bus. Thus, CoachWest had no duty to exercise reasonable care in its design, and is entitled to summary judgment on this aspect of Plaintiffs' negligence claim.

### 2. Failure to Warn

Next, CoachWest seeks summary judgment regarding the failure to warn aspect of Plaintiffs' negligence claim. In support, they argue that they had no duty to provide warnings in addition to those provided by the manufacturer. Under Indiana law, a seller may be held liable for failure to warn if they do not "(1) properly package or label the product to give reasonable warnings of danger about the product; or (2) give reasonably complete instructions on the proper use of the product." Ind. Code § 34-20-4-2. This obligation to warn extends to "those persons [the seller] should reasonably foresee would be likely to use the product or who are likely to come into contact with the danger inherent in the product's use." *Nat. Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 162 (Ind. Ct. App. 1997). But "absent special circumstances, if the manufacturer provides adequate warnings of the danger of its product and the seller passes this warning along to the buyer or consumer, then the seller has no obligation to provide additional warnings." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). If a warning is given, "the seller may reasonably assume that it will be read and heeded" by the buyer. *Id.* at 811. Nor is there any duty to give an exceedingly obvious warning. "[I]t is unlikely that any book of instructions given with a car warns that, if a user accidentally steps on the accelerator instead of the brake, he may be hurt, nevertheless

19

no case has yet held the manufacturer liable under such circumstances." *American Optical Co. v. Weidenhamer*, 457 N.E.2d 181, 187 (Ind. 1983). Whether a duty to warn attaches is "generally a question of law for the court to decide." *Downs*, 685 N.E.2d at 161.

In its motion for summary judgment, CoachWest presents a twofold argument. First, it argues that if the danger requiring a warning was the danger of an accident or rollover when a driver leaves the roadway, it had no duty to warn because the risks of doing so would be obvious. Second, it argues that if the danger to be warned of was the absence of ESC from the chassis, it had no duty to warn because the buyer of the tour bus had already been effectively warned by the manufacturer.

If the danger to be warned against was the danger of an accident or rollover when a driver leaves the roadway, CoachWest argues that they had no duty to warn of this risk as a matter of law. In support, it cites *American Optical Company* for the pertinent example that there is no duty to warn of a risk as obvious as stepping on the gas instead of the brake in a car. 457 N.E.2d at 187. Similarly, there is no duty as a matter of law to warn of a risk as obvious as driving off the side of the road. To the degree that Plaintiffs argue duty to warn on this basis, that argument fails.

If the danger to be warned against was the absence of ESC, CoachWest puts forward two key pieces of evidence to show they had no additional duty to warn the purchaser of the tour bus. First, they point the Court to the Freightliner chassis Owner's Manual that SVO gave to CoachWest and CoachWest passed on to Ms. Young. The Owner's Manual states that

> [c]ustom-built Freightliner vehicles are equipped with various chassis and cab components. Not all of the information contained in this manual applies to every vehicle. For details about components in your vehicle, refer to the chassis specification pages included in all new vehicles and to the vehicle specification decal, located inside the vehicle.

(ECF 191-9 at 4). The manual also directly references ESC, noting that "Electronic Stability Control (ESC) is intended only as an aid for a conscientious and alert driver" before going on to detail the function and benefits of ESC. (*Id.* at 15). Next, they point to Mr. Real's deposition, where he testifies that he provided Freightliner Owner's Manuals to customers that purchased vehicles with Freightliner chassis. (ECF 191-8 at 87:3–8; 162:18–23), and the deposition of Ms. Young, the buyer of the tour bus, who testifies that she was provided the Owner's Manual, (202-4 at 195:8–13). On this basis, CoachWest argues that the uncontroverted evidence establishes the buyer of the tour bus received the manufacturer's Owner's Manual, and that manual warned of the absence of ESC by detailing the benefits of ESC but also making clear that ESC may not be included on the tour bus and directing the owner to look elsewhere to confirm its presence.

In response, Plaintiffs argue that Ms. Young, the purchaser of the tour bus, was unaware of the availability of ESC and unequivocally would have ordered ESC if it were available. To support this argument, they point the Court to Ms. Young's deposition. Ms. Young does testify that she was unaware of the existence of ESC, let alone that the chassis of the tour bus she bought sometimes included it, until her deposition in this case. (ECF 202-4 at 193:21–194:4). And she does testify that if she had known about ESC, she would have wanted it. (*Id.* at 194:21–195:6). But this misses

CoachWest's point, which is that the Owner's Manual explained ESC and noted where an owner should check to confirm whether it was installed on her vehicle. In fact, Plaintiffs themselves repeatedly emphasize in their response to CoachWest's statement of material facts that the manual made clear that ESC was an "*optional* safety feature." (ECF 200 ¶¶ 12, 14, 16 (emphasis in original)). Ms. Young, when asked whether she saw anything in the Owner's Manual indicating that ESC was not on her vehicle, responded that she did not know. (*Id.* at 197:7–10). She does, however, recall that she was provided the Owner's Manual. (*Id.* at 195:8–13). As she received the Owner's Manual, CoachWest was able to reasonably assume that she would read and heed it. *Rushford*, 868 N.E.2d at 811.

Plaintiffs maintain that the warnings in the Owner's Manual are not enough. But Plaintiffs have failed to articulate what a superior warning should have said or how it should have been conveyed. This is "essential" evidence to Plaintiffs' claim. *Timm*, 309 F. Supp. 3d at 602 (citing *Morgen v. Ford Motor Co.*, 797 N.E.2d 1146, 1152 (Ind. 2003); *Nissen Trampoline Co. v. Terre Haute First Nat'l Bank*, 358 N.E.2d 974, 978 (Ind. 1976)) (finding that evidence of what a proper warning should state is indispensable to a failure-to-warn claim). Without it, the parties and courts are "required to hypothesize as to specific warnings that would meet muster." *Morgen*, 797 N.E.2d at 1152. While Plaintiffs' expert provides opinions about the risks of operating a bus without ESC, these opinions are mostly focused on DTNA. (ECF 202-3 at 19–24). He does not address what would constitute a sufficient warning, and Plaintiffs offer no other evidence that touches on the subject.

Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel*, 407 F.3d at 859. CoachWest has put forward uncontroverted evidence that it provided the buyer of the tour bus with the manufacturer's Owner's Manual, a document that explained the benefits of ESC, warned that ESC was not included on all chassis, and provided the buyer with instructions on how to determine whether their chassis was equipped with ESC. Though Plaintiffs challenge this warning, they have failed to offer evidence or articulate "what the warning should have said or how it should have been conveyed." *Timm*, 309 F. Supp. 3d at 602. Thus, Plaintiffs have not established a genuine issue of material fact over whether CoachWest had a duty to warn the buyer beyond the warning provided by the manufacturer. Summary judgment is appropriate on this aspect of Plaintiffs' negligence claim.

### iii.   *Wrongful Death*

Finally, CoachWest seeks summary judgment on Plaintiffs' wrongful death claim. In support, they argue that Plaintiffs may only bring a wrongful death claim under Indiana's Wrongful Death Act ("WDA") if they are the personal representatives of the decedent, and Plaintiffs are not the personal representatives of the alleged decedents. They further argue that the WDA imposes a two-year time limit on appointment of a personal representative, and that period has lapsed. Plaintiffs respond that this case was not transferred to this Court until after the time limit had lapsed. They further argue that CoachWest's argument fails specifically as to WenHao Qi.

The WDA provides that "[w]hen the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action" against the party that caused the death if the action is "commenced by the personal representative of the decedent within two (2) years . . . ." Ind. Code § 34-23-1-1. This two-year limit is enforced rigidly. *Robertson v. Gene B. Glick Co.*, 960 N.E.2d 179, 184 (Ind. Ct. App. 2011) ("[The Wrongful Death Act] is a creature of the legislature; . . . thus, the statute must be strictly construed and the time constraint provided in the GWDA is not a statute of limitations, but rather, a condition precedent."). Both parties agree that no estate has been opened for any of Plaintiffs, nor any personal representative appointed. So the critical question for the Court is whether Indiana's WDA time limit binds Plaintiffs when they arrived in this Court after it had already lapsed.

When a case is transferred pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties, the law of the transferring court applies. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). But when a case is transferred pursuant to 28 U.S.C. § 1406(a) to cure a jurisdictional defect, the law of the transferee court's forum applies. *See Gonzalez*, 734 F.2d at 1223, *superseded on other grounds*, 752 F.2d. 295. Here, as noted above, the parties stipulated to transfer due to jurisdictional defect. (ECF 15). The transferring court did not cite a particular statute for transfer, but the parties stipulated to jurisdictional defect, so this Court will treat the transfer as pursuant to § 1406. Accordingly, Indiana law applies. Plaintiffs may not benefit from laying venue in a court that could not exercise personal jurisdiction. *See Gonzalez*, 734 F.2d at 1224; *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) ("We . . . remind plaintiffs and their counsel that they must determine where

24

the plaintiff can get personal jurisdiction over the defendants before, not after, the statute of limitations runs; otherwise they court disaster.").

Because Indiana law applies, the WDA's time limit governs. Plaintiffs have failed to satisfy the requirements of the statute, and therefore CoachWest is entitled to summary judgment on this claim as to all Plaintiffs besides WenHao Qi.

Plaintiffs specifically argue that even if the Court determines that Indiana law applies and the WDA's time limit governs, WenHao Qi, the heir of decedent plaintiff Yiuyun Chen, can maintain a wrongful death action under the WDA because he was appointed as Yiuyun Chen's personal representative within the applicable time limit. In support, Plaintiffs argue that a party need not be appointed a personal representative in Indiana to pursue a claim under the WDA so long as he is appointed a personal representative somewhere. *See Blusy v. Rugh*, 476 N.E.2d 874, 877 (Ind. Ct. App. 1985) ("[A] foreign personal representative may bring a wrongful death action in Indiana within two years of the deceased's death without the necessity of appointment as personal representative in Indiana."). They contend that Mr. Qi was appointed as Yiuyen Chen's personal representative in China prior to the commencement of this action, and therefore Mr. Qi's claim is not barred by the WDA's time limit. As evidence, they offer an English translation of an inheritance right notarization document filed in the Notary Office of Pudong, Shanghai, People's Republic of China. (ECF 202-7).

But while this document establishes that Mr. Qi is Yiuyen Chen's heir, it does not establish Mr. Qi as a personal representative. Under Indiana probate law, "'personal representative' includes executor, administrator, administrator with the will annexed,

25

administrator de bonis non, and special administrator." Ind. Code § 29-1-1-3(30). The document submitted by Mr. Qi establishes that Yiuyen Chen's estate "shall be solely inherited by her son, Qi, Wenhao," but it does not assign Mr. Qi responsibilities comparable to an executor or administrator of Yiuyen Chen's estate. (ECF 202-7 at 3). Plaintiffs do not offer any argument to the contrary beyond the bare assertion that this document is "legally comparable to the Indiana requirement." (ECF 203 at 32). Without evidence or case law to support Plaintiffs' argument, the Court finds that the submitted document is not equivalent to appointment of a personal representative under Indiana law. Accordingly, CoachWest is entitled to summary judgment on Mr. Qi's wrongful death claim as well.

Separately, CoachWest is entitled to summary judgment because the WDA requires a viable cause of action that the decedents could have maintained against Defendants. *See Spoonamore v. Armstrong World Inds., Inc.*, 105 F. Supp. 2d 922, 927 (S.D. Ind. 1999) ("Although the wrongful death action is an independent and not derivative action, the wrongful death action is proven by the plaintiff maintaining causes of action that the deceased could have maintained against the defendant."). Here, summary judgment has been granted on Plaintiffs' IPLA claims, and there are no remaining theories of liability that could entitle them to recovery on wrongful death grounds. Thus, summary judgment is appropriate for this independent reason.

26

*iv. CoachWest's Motion for Determination of Governing Law*

On October 2, 2025, CoachWest moved for a determination of the governing law. (ECF 212). The Court has made that determination in this order. Thus, CoachWest's motion is denied as moot.

## IV. CONCLUSION

For these reasons, CoachWest's motion for summary judgment, (ECF 190), is **GRANTED**, and its motion for a determination of the governing law, (ECF 212), is **DENIED AS MOOT.** Because there are no defendants remaining, the Clerk is **DIRECTED** to close this case.

SO ORDERED on March 17, 2026.

<u>    /s/ *Cristal C. Brisco*                    </u>
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT